(77 South. 471)

No. 20950.

ATLAS OIL CO. v. STANDARD OIL CO. OF LOUISIANA.

(Nov. 26, 1917. Rehearing Denied Jan. 3, 1918.)

*(Syllabus by the Court.)*

MINES AND MINERALS ☞83—OPERATION OF CONTRACT—SUIT FOR PAYMENT—DEFENSE.

Where, under a contract between an oil producer and a pipe owner, the producer gives and the owner accepts a bond for $100,000, the purpose of which is, on the one hand to entitle the producer to demand and receive his proportion of the price of certain oil, to be delivered into the pipe, notwithstanding that adverse claims thereto are pending and threatened, and, on the other hand, to protect the owner of the pipe as against such claims, with respect to payments to be made to the producer, within the amount called for by the bond, the fact, that after paying to the producer $90,000 on the faith of the bond there are still adverse claims pending or threatened affords no sufficient reason why the pipe owner should balk and refuse to pay the remaining $10,000 required to complete the $100,000 to obtain the payment of which the bond (the solvency of which is unquestioned) was given.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by the Atlas Oil Company against the Standard Oil Company of Louisiana. Judgment for plaintiff rejecting its demand for a cancellation of the bond, and defendant appeals. Judgment amended by reducing the award, and otherwise affirmed.

J. C. Pugh & Son, of Shreveport, for appellant. Alexander & Wilkinson, of Shreveport, for appellee.

Statement of the Case.

MONROE, C. J. Defendant has appealed from a judgment rendered upon a rule to show cause and which condemns it upon the petition and answer herein filed. The petition was filed in May, the answer on June 6th, and the rule on July 8, 1914, and Act 300 of 1914, amending and re-enacting Act 157 of 1912 (known as the Pleadings and Practice Act), was not approved until July 9, 1914, from which it follows that the question here at issue is to be determined by the act of 1912, and not by that of 1914.

The suit is brought for the recovery of a balance of $17,534.91, alleged to be due to plaintiff for oil delivered by it into defendant's pipe line, for an accounting for oil so delivered since February 28, 1914, and for the cancellation of a bond for $100,000 given by plaintiff to defendant with respect to payments for oil so delivered, as also for plain-

tiff's release from further obligation in the matter of giving bond on that account.

The particular allegations upon which, considered with respect to the answer, the judgment appealed from may be presumed to have been rendered, are substantially as follows:

(1) That defendant owes plaintiff $17,534.91, with interest from February 28, 1914.

(2) That plaintiff was owner and in possession of an oil well, on a point of land at Mooringsport, known as "Noel A, No. 1," the oil from which was delivered into defendant's pipe line, under a contract with defendant.

(3) That while said oil was being so delivered, T. J. Stockley brought suit against plaintiff claiming ownership of said land.

(4) That, under its said contract, defendant required plaintiff to give it a bond, "protecting it against any claims that the said T. J. Stockley might make," and that plaintiff thereupon executed and delivered to defendant a bond in the sum of $100,000.

(5) That the suit so brought by Stockley resulted in a judgment, which became final on March 5, 1914, rejecting his demands.

(6) That defendant, nevertheless retains the amount herein claimed due plaintiff for oil delivered.

(7) That plaintiff has had no accounting from defendant for oil delivered since February 28, 1914.

(8) That the bond of $100,000, given to protect defendant from the claims of Stockley, has never been canceled.

(9) That said bond should have been canceled upon the termination of Stockley's suit, but that defendant refuses to cancel it.

Wherefore plaintiff prays for judgment as hereinabove stated.

Defendant, for answer, denies all the allegations of the petition, except such as may be specially admitted:

(1) It admits that plaintiff is credited on its books with the sum of $17,534.91 for oil delivered from Noel well A, No. 1.

(2) Admits that plaintiff drilled said well on said property claimed by James S. Noel, and that it received the oil therefrom in its pipe line.

(3) Admits the institution of the suit by Stockley against plaintiff and Noel, and that he gave notice of same to defendant.

(4) Admits that it demanded a bond from plaintiff "to hold it harmless against all adverse claims to the ownership of said property, of any nature or character whatever," a copy of which is annexed to and made part of the answer; that at the time of the execution of said bond the heirs of W. H. R. Croom were claiming to own said property, and are now threatening to institute suit to be decreed the owners thereof; that said well is located on unsurveyed land below the traverse line of Caddo Lake, and that it is located on high ground, not covered by water, and has never been segregated from the public domain, and apparently still remains the property of the United States; that the traverse line of said lake was apparently run through error, as it left a large body of land between said traverse line and the lake, as shown by map annexed hereto and made a part of the answer; that your respondent has been informed that the United States is claiming said land on which said well is located, and to protect your respondent against all adverse claimants it required the plaintiff to execute the bond to indemnify it against loss against all claims which may be asserted by any adverse claimants whatever, together with all interest and costs for which your respondent may be rendered liable, as all of which will appear by the terms, conditions, and stipulations in said bond.

(5) "In answer to the fifth paragraph of plaintiff's petition, your respondent admits that a judgment was rendered in the suit of Stockley v. Atlas Oil Company, No. —— on the docket of the district court, rejecting the said Stockley's demands, on February ——, 1914, but your respondent avers that the said Stockley has one year within which to prosecute an appeal from said judgment and the one year will not expire until March 5, 1915."

(6) "In answer to the sixth paragraph of plaintiff's petition, your respondent avers that it has paid to the said plaintiff more than 75 per cent. of the amount of said bond for $100,000 executed by it as aforesaid, and that the balance of the oil run from the said well was reserved by your respondent to indemnify it against any loss which might be occasioned to it on account of the assertion of ownership by adverse claimants; that at the time of the execution of said bond the plaintiff was advised that your respondent would require bond for 25 per cent. over and above the amount paid to the plaintiff as additional indemnity and that said bond was executed by the said plaintiff with the understanding that payments were to be made as stated; that thereafter the said plaintiff insisted that the entire amount due it for oil run from said well should be paid, and your respondent thereupon notified the said plaintiff, its agents and employé, that it was ready and willing to pay any amount due for oil run from said well, on condition that the said plaintiff would execute an additional bond, so as to hold respondent harmless from any liability on account of adverse claimants to the ownership of the said property, but, notwithstanding such an offer on the part of your respondent, the said plaintiff refused and declined to execute any further or additional bond.

(7) "In answer to the seventh paragraph of plaintiff's petition your respondent annexes hereto a full and complete account of all of the oil run from the said well up to and including the month of May, 1914, all amounting to the

sum of $108,583.78, on which your respondent has paid the sum of $90,000.

(8) "In answer to the eighth paragraph of plaintiff's petition your respondent avers that said bond was not specially executed to indemnify it against loss on account of the suit by the said Stockley, but was demanded and the same executed to hold it harmless against the claims of any and all adverse claimants, and that the plaintiff has no right to demand the cancellation of said bond until all question as to the ownership of said property is finally settled, as all of which will appear on the trial hereof.

(9) "In answer to the ninth paragraph of plaintiff's petition defendant denies that said bond should have been canceled, and admits that it refuses to cancel the same.

"Further answering, your respondent avers that when it took said oil it was specially stipulated, agreed, and understood that 'in case of any adverse claim of title, (?) to furnish the Standard Oil Company of Louisiana satisfactory evidence of title, or in case of failure to do so, to furnish satisfactory indemnity, upon reasonable demand against such adverse claim or claims, and that the said Standard Oil Company of Louisiana may retain the purchase price of the oil until we do so, or until the dispute as to ownership is settled'; that your respondent has always been ready and willing to pay said amount on the plaintiff's executing bond, or when the question of title to said property should have been finally settled.

"Wherefore, promises being considered, respondent prays that plaintiff's demands be rejected; that, in the alternative, should the court hold that the plaintiff is entitled to judgment for the balance due for oil run from said well, then and in that event it should be paid, without interest, upon the plaintiff's executing bond to hold respondent harmless from liability on account of the adverse claims of ownership to said property."

Annexed to the answer is a copy of the bond which plaintiff seeks to cancel and which is herewith reproduced, to wit:

"Know all men by these presents, that we, Atlas Oil Company, as principal, and American Surety Company of New York, as surety, are held and firmly bound unto the Standard Oil Company of Louisiana in the penal sum of one hundred thousand ($100,000.00) dollars, for which said sum we bind ourselves, our successors and assigns, jointly and severally, by these presents to pay.

"Now the condition of the above obligation is such that:

"Whereas, the above bounden Atlas Oil Company claims to have a lease on a tract of land at Mooringsport, Louisiana, upon the bank of the lake, located on property leased to it by James S. Noel, in township 20, range 16, Caddo parish, Louisiana, on which it has drilled a well, producing oil; and,

"Whereas, the oil from said well is being run by the Standard Oil Company of Louisiana, and the above bounden Atlas Oil Company claims to be the owner of said oil, less the royalties due to the said James S. Noel, as per the contract of lease; and,

"Whereas, there are adverse claims to the ownership of said property; and, whereas, by the contract under which the Standard Oil Company of Louisiana is taking oil from said well as aforesaid, the said Atlas Oil Company has the right to withdraw its part of the proceeds from said oil run from said well by executing bond with approved security:

"Now, therefore, if the said bounden Atlas Oil Company shall hold the said Standard Oil Company of Louisiana harmless against all claims which may be asserted by any adverse claimants whatever to said property or the oil produced therefrom to the extent of such amount as the Standard Oil Company of Louisiana shall pay to the said Atlas Oil Company (not to exceed, however, the penal sum of one hundred thousand [$100,000.00] dollars named in this bond), together with all interest and costs, then, and in such event, this obligation shall be null and void, otherwise to remain in full force and effect."

Annexed to the answer also is a statement showing that plaintiff had been paid $90,000, and that a balance, as of date June 1, 1914, amounting to $18,583.78, was withheld. The answer and exhibits were filed on July 6th. On July 7th plaintiff filed its rule for judgment on the petition and answer, which was served on the same day. On July 11th defendant filed in open court, subject to plaintiff's objection, an amended answer, reading:

"That since the filing of the answer herein the heirs of the late C. S. and M. A. Croom have instituted suit against the said J. S. Noel, the Atlas Oil Company and your respondent, in which they are asserting ownership to the property on which said well is located, as shown by suit No. 18816 on the docket of the district court, Caddo parish, Louisiana, entitled C. B. Croom et al. v. J. S. Noel et al., and to which reference is hereby had as a part hereof; and that your respondent is fully justified, not only under the allegations contained in the original answer, but on account of the recent suit filed by the Croom heirs as aforesaid in declining to pay the Atlas Oil Company for the oil taken from said well without bond and security as provided in the original contract of sale which was referred to in the original answer herein."

On July 13th plaintiff's rule, having been made returnable on that day, was submitted,

and on October 17th there was judgment in favor of plaintiff for $18,583.78, with legal interest from February 28, 1914, until paid, and all costs, but rejecting its demand for the cancellation of the bond; and from that judgment defendant prosecutes the appeal.

## Opinion.

Act 157 of 1912 declares that the plaintiff shall, so far as practicable, set forth his cause of action by stating each material fact upon which he bases his claim, in a separate paragraph, separately numbered, and that defendant shall in his answer either admit or deny specifically each material allegation of fact contained in plaintiff petition, basing his denial of each upon sufficient information to justify belief, where that is the case, and so expressly qualifying his denial; that all material allegations of fact contained in the petition and not denied in the answer shall be deemed admitted; that at any time after the answer is filed plaintiff may by rule submit to the court the question of his right to a judgment on the petition and answer, and that for the purposes of the trial of such rule, all material allegations of fact contained in the petition and not denied and contained in the answer shall be taken as true; that if, upon the consideration of the petition and answer, as thus provided (i. e., upon the submission of the rule), the court shall be of opinion that plaintiff is entitled to judgment, it shall proceed to render and sign such judgment in the same manner and form and with the same effect as if a trial had been had upon evidence regularly adduced, and such judgment shall constitute, for all purposes, a definitive judgment, etc. And under other provisions of law the judgment so rendered is subject to review, on appeal, like any other judgment.

Considering, then, the allegations of fact contained in the petition, with the denials and allegations of the answer, we find that although the answer extends the use of the word "admit" to cover cases in which the word "allege" would serve a better purpose, yet, that, construing the admissions and allegations of the answer with the allegations of the petition, it becomes fairly apparent that, under a contract to which plaintiff and defendant were parties, defendant acquired the right to receive into its pipe line the oil to be produced from a certain well which had been drilled by plaintiff on land, the ownership of which was claimed by one Noel, and assumed the obligation to pay to plaintiff its proportion of the price of the oil when so received, subject, however, to the condition that plaintiff should furnish bond with approved surety to protect defendant against possible liability to any third person who might be then claiming, or might thereafter claim, as the rightful owner of said land the price of the oil produced therefrom. We further find that in compliance with said condition plaintiff furnished the bond mentioned in the pleadings—for $100,000—which contains the following in the recital of its condition, to wit:

"Whereas, there are adverse claims to the ownership of said property; and, whereas, by the contract under which the Standard Oil Company * * * is taking said oil, * * * the said Atlas Oil Company has the right to withdraw its part of the proceeds from said oil, run from said well, by executing bond, with approved security:

"Now, therefore, if the said bounden Atlas Oil Company shall hold the said Standard Oil Company * * * harmless against all claims which may be asserted by any adverse claimants whatever to said property or the oil produced therefrom to the extent of such amount as the Standard Oil Company * * * shall pay to the said Atlas Oil Company (not to exceed, however, the penal sum of one hundred thousand [$100,000] dollars, named in this bond), together with all interest and costs, then, and in such event, this obligation to be null and void, otherwise to remain in full force and effect."

We further find that it must be taken as true that when said bond was executed, the heirs of Croom were claiming to be the owners of the property in question, and were

threatening suit for its recovery; that thereafter such a suit was actually instituted by Stockley, and though decided in favor of plaintiff was still pending, in the sense that the delay for appeal had not expired when the present suit was instituted; that defendant had at that time been informed that the government of the United States was also asserting claim to said property; and that in the meanwhile defendant had actually paid to plaintiff, as the price of oil received by it, the sum of $90,000, and had in its hands for oil so received prior to February 28, 1914, a balance of $18,583.78. And from the facts so found we conclude that it was the purpose of the parties in giving and accepting the bond for $100,000 upon the one hand to entitle plaintiff to demand and collect from defendant its proportion of that amount, representing the price of oil delivered from the said Noel well, notwithstanding that adverse claims thereto were pending or threatened, and upon the other hand to protect defendant against such claims with respect to payments made to plaintiff within the amount of the bond on account of such oil, for such in effect is the language of the bond, and it is obvious that plaintiff had nothing to gain, and a good deal (in the way of premiums) to lose, by giving bond to secure defendant with respect to money which defendant was to receive and was in a position to hold in its possession, and defendant had no interest in taking a bond with respect to such money; but, having taken it on condition that it would let plaintiff have an amount equal to that called for by the bond, it is bound to comply with its contract, and nothing to lose by so doing, since the bond was taken and accepted as the equivalent of the money, and its solvency is not questioned.

Seeing the matter, then, as we do, we are unable to understand the theory upon which plaintiff demands either the cancellation of

142 LA.—20

the bond (more particularly as it has received $90,000 upon the faith of it) or any more money than the bond represents and secures, and equally unable to understand why the defendant, having agreed to pay $100,000, on the faith of the bond, and to that extent take its chances as against adverse claimants, should suddenly balk after paying $90,000. It is true that it is under no obligation to pay the whole amount here demanded by plaintiff, and admitted to be in its possession, but it can have no excuse for not paying the balance of $10,000 necessary to make up the $100,000, which, in taking the bond, it agreed to pay. The conclusion thus reached disposes of the claim for a moneyed judgment, and as no one complains of the judgment appealed from in so far as it disposes of plaintiff's demands with reference to the bond, and the giving of a bond, there is nothing left to be tried on the merits.

It is therefore ordered and decreed that the judgment appealed from be amended by reducing the amount awarded plaintiff from $18,583.78 to $10,000, and that in all other respects it be affirmed; plaintiff to pay the costs of the appeal.